IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 11-cv-02896-JLK**

**THE WATER SUPPLY AND STORAGE COMPANY**,

    Plaintiff,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE,**

**TOM VILSAK,** in his official capacity as Secretary of the United States Department of Agriculture**, MARIBETH GUSTAFSON,** in her official capacity as Regional Forester for the Rocky Mountain Region of the United States Department of Agriculture Forest Service**, GLENN P. CASAMASSA,** in his official capacity as Forest Supervisor of the Arapaho and Roosevelt National Forest and Pawnee National Grassland, United States Department of Agriculture Forest Service**, UNITED STATES DEPARTMENT OF INTERIOR, KEN SALAZAR,** in his official capacity as Secretary of the United States Department of Interior**, UNITED STATES PARK SERVICE, JOHN WESSELS,** in his official capacity as Director, Intermountain Region, United States National Park Service**,**

    Respondents,

    and,

**COLORADO TROUT UNLIMITED,**
    Defendant Intervenor.

---

ORDER GRANTING WSSC's MOTION to COMPELTE THE ADMINISTRATIVE RECORD, DOC. 37

---

Kane, J.

Before me is Petitioner's (WSSC) Motion to Complete and Supplement the Administrative Record (Doc.37).[1] The underlying case challenges agency action requiring Petitioner to complete a large and involved Greenback Cutthroat Trout Restoration Project ("GBCT Project"). Petitioner has also filed a Motion to Order Authorizing Limited Discovery (Doc. 38).

*Introduction and Background*

This lawsuit challenges the Federal Respondents' respective final agency decisions requiring WSSC to undertake a sizable and complicated Greenback Cutthroat Trout Restoration Project ("GBCT Project"). Ostensibly under the authority of the Federal Land Policy and Management Act of 1976, 43 U.S.C. §1765, *et seq.* ("FLMPA"), the agencies' Records of Decision ("RODs") seek to condition WSSC forty-plus year use and operation of the Expanded Long Draw Dam and Reservoir ("Expanded LDR") on the implementation of an ecological restoration project that aims to create a sustainable GBCT "meta-population" in 37 miles of streams and 106 acres of lakes at high elevation in the Northern Rocky Mountains. Motivating WSSC's central objection to the GBCT Project is a belief that the selection of the GBCT Project is inconsistent with the National Environmental Policy Act of 1969, 42 U.S.C. §4321, *et seq.* ("NEPA"), the Council on Environmental Quality regulations implementing NEPA, 40 C.F.R. §1500-1581, and violates FLPMA. In the instant motion, Petitioner WSSC seeks an order obliging Federal Respondents to beef up the Record with a set of handwritten notes produced by Kevin Colby, a Forest Service Interdisciplinary Team ("IDT") member and author of the Forest Service's "Specialist Report-Aesthetics"("Colby Notes").[2]

---

[1] Parties refer to themselves as "Plaintiff" and "Federal Respondents," but because this is an AP case, their proper appellations are "Petitioner" and "Federal Respondents."

[2] Before its reply brief submission, Petitioner also sought to supplement the record with a scientific study paper discussing greenback cutthroat trout ("GBCT") genetics written by Kevin

The IDT Mr. Colby participated on was actively involved in Federal Respondents' NEPA analysis.  The IDT met between 2005, when the Federal Respondents began the NEPA process, and 2010, when the Federal Respondents issued their RODs.  The IDT did not meet quite every month during that five year span, but it met most months and typically prepared agendas and minutes for its meetings.  What agendas and minutes the IDT formally created, Federal Respondents have included in the Record. For some meetings, however, the IDT created no formal agendas and/or minutes, and Federal Respondents have not included in the Record any documentation for those meetings.

As a result of a 2008 Freedom of Information Act request, WSSC obtained the Colby Notes, which include notes taken during August 2005, December 2005, February 2007, and December 2007 IDT meetings—all meetings for which no formal documentation exists.  As the Record is therefore silent on these assemblies, the Colby Notes represent the sum total of information WSSC has in terms of understanding the happenings of four IDT sessions.  Given the Record's muteness on the substantive conferences memorialized by the Colby Notes, and for other reasons as discussed below, WSSC seeks an order compelling Federal Respondents to complete and/or supplement the Record with the Colby Notes.

## LEGAL STANDARDS

---

Rodgers and entitled *Cutthroat Trout Taxonomy: Exploring the Heritage of Colorado's State Fish*, which work was presented to the Wild Trout X symposium-Conserving Wild Trout (2010)("Rodgers Study").  Likewise, Petitioner originally sought the inclusion of additional documentation and correspondence regarding a Multi-Party Memorandum of Agreement and Commitments ("MOU") shared by and among the Federal Respondents, Petitioner, the Colorado Division of Wildlife ("DOW"), the Colorado Department of Natural Resources ("DNR"), Colorado Trout Unlimited ("CTU"), and the City of Greeley ("Greeley")("MOU Documents").  Now, given the recent publication of a new study by Dr. Jessica L. Metcalf, of which report Mr. Rodgers is one of several co-authors, Petitioner withdraws its request that the Rodgers Study be added to the record.  *See FN 2, Doc. 47.*  Furthermore, having accepted the affidavits of Lawrence H. Gamble and Kristen J. Sexton as truthfully corroborating Federal Respondents' claim of having no additional MOU materials, Petitioner withdraws its MOU request.

WSSC challenges the Respondents' actions under NEPA and FLPMA. As these statutes fail to define or specify the standard of review to be used in examining Respondents' actions, the Administrative Procedures Act ("APA"), 5 U.S.C. § 500, *et seq.,* provides the framework for this appeal. Accordingly, I must apply the standards articulated in the APA in considering the merits of Petitioner's Motion to Complete/Supplement the Administrative Record.

*Judicial Review of Informal Rulemaking under the APA*

Under the APA, I review Respondents' informal rulemaking to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). As the Supreme Court held in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), "the generally applicable standards of § 706 require the reviewing court to engage in a substantial inquiry." *Id*. at 415, 91 S.Ct. 814. At the same time, the Supreme Court acknowledged "the Secretary's decision is entitled to a presumption of regularity." *Id*. The Court emphasized, however, that the "presumption is not to shield [the Secretary's] action from a thorough, probing, in-depth review." *Id*. The tension inherent in this language is revealed by the Court's own declaration that though "this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id*. at 416, 91 S.Ct. 814.

Therefore, in conducting my review of Respondents' actions, I must strike a balance between presumption and probe. In order to afford appropriate deference, I review the administrative agency's decision as an appellate body. See *Olenhouse v. Commodity Credit Corp*., 42 F.3d 1560, 1580 (10th Cir.1994). As a result, I apply the Federal Rules of Appellate Procedure and, generally, confine my review to the evidence relied upon by Respondents in reaching the challenged decision. *Id*. at 1580. In order to ensure a "substantial inquiry," however,

I also apply a variety of rules and exceptions consistent with my responsibility to ensure meaningful judicial review. This general framework governs not only my analysis of the agencies' challenged decision, but also my analysis regarding the sufficiency of the Administrative Record submitted by Respondents

*Legal Standard for Judicial Review of the Sufficiency of the Administrative Record*

The APA directs that "the court shall review the whole record or those parts of it cited by a party . . .." 5 U.S.C. § 706.   As I have noted before, the definition of the "whole record" has, unfortunately, proven rather opaque.  Addressing the scope of review in *Overton Park*, the Supreme Court instructed lower courts to limit their review of agency decisions to "the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 420.  The Court refined this mandate in *Camp v. Pitts*, 411 U.S. 138 (1973), stating that "[t]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Id.* at 142; *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) ("The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court").

Of course, one cannot review the "whole record" without knowing what comprises "the whole record."  In accordance with my role in reviewing agency action under § 706, I begin my review of the sufficiency of the submitted Administrative Record by applying a "presumption of regularity" to the record as it is designated by the agency.  In order to ensure a "probing inquiry" and a "thorough, probing, in-depth review," however, I also consider the exceptions by which Petitioners may prove the insufficiency of an agency designated record and introduce additional documentation and evidence.  It does not escape me that there has been considerable brouhaha

concerning these exceptions that allow an administrative record to grow, and courts differ in their formulation and application of these exceptions.[3] Generally, however, documentation and evidence suitable for annexing to an agency's designated record takes two distinct, yet often confused, forms: (1) materials which were actually considered by the agency, yet omitted from the administrative record ("completing the record"); and (2) materials which were not considered by the agency, but which are necessary for the court to conduct a substantial inquiry ("supplementing the record").[4]

*Completing the Record*

In order to decide whether the administrative record submitted by Respondents is complete, I must determine whether the record contains "all documents and materials directly or indirectly considered by the agency." *Bar MK Ranches v. Yeutter*, 994 F.2d. 735, 739 (10th Cir. 1993). Consistent with the deference owed an agency under § 706, I assume the agency properly

---

[3] As illustration of the different approaches taken by courts in conducting review under § 706, compare *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 444 (7th Cir. 1990) ("Confining the district court to the record compiled by the administrative agency rests on practical considerations that deserve respect. Administrative agencies deal with technical questions, and it is imprudent for the generalist judges of the federal district courts and courts of appeals to consider testimonial and documentary evidence bearing on those questions unless the evidence has first been presented to and considered by the agency") with *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) ("The court cannot adequately discharge its duty to engage in a 'substantial inquiry' if it is required to take the agency's word that it considered all relevant matters").

[4] Such confusion has significant consequences for courts and litigants. There are meaningful differences between the standard for establishing that an agency should be required to "complete the record" with documents it actually considered versus the showing required to establish that a court should "supplement the record" with materials which were not before the agency when it made the challenged decision. For an excellent discussion of the differences between "completing the record" and "supplementing the record" see *Cape Hatteras Access Pres. Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111 (D.D.C. 2009). Perhaps unnecessarily contributing to the confusion, I use terminology conflicting with the *Cape Hatteras* court (what I term "completing the record," the *Cape Hatteras* court refers to as "supplementing the record;" what I term "supplementing the record," the *Cape Hatteras* court refers to as "going beyond the record"). It is my belief, however, that the terminology used in this opinion is most logically consistent with the underlying differences and has the greatest promise of eliminating any confusion.

designated its record absent clear evidence to the contrary. *Id.* at 740. Therefore, the burden to rebut the presumption of a complete record initially rests with Petitioner who must show by clear evidence that the record fails to include documents or materials considered by Respondents in reaching the challenged decision. The rationale for limiting the record to those documents directly or indirectly considered by relevant agency decision makers is grounded in the need to afford adequate deference to agency expertise while ensuring meaningful judicial review of the full administrative record. *Id.* at 739.

To overcome the presumption of regularity and meet the burden of proving that the record designated by the agency is incomplete, Petitioner must clearly set forth in their motion: (1) when the documents were presented to the agency; (2) to whom; (3) and under what context. *WildEarth Guardians v. Salazar*, 2010 U.S. Dist. LEXIS 32256, *17 (D. Colo. April 1, 2010) (citing *Pacific Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006)). This showing is not, however, sufficient grounds for admitting the proffered documents into the Administrative Record. Petitioners must also establish that these documents were directly or indirectly considered by the relevant agency decision makers. *Bar MK*, 994 F.2d at 739.

*Supplementing the Record with Extra-Record Evidence*

Consistent with the "presumption of regularity" noted above, I hesitate to allow parties to supplement the record with evidence not considered by the agency in reaching its challenged decision. As the D.C. Circuit has noted, "To review more than the information before the Secretary at the time she made her decision risks our requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984). Despite my general reluctance, however, I must

consider the exceptions which allow a party to introduce extra-record evidence.  Although these exceptions find their nascence in the Supreme Court's ruling in *Overton Park*, which allowed lower courts to conduct some form of *de novo* review "when the action is adjudicatory in nature and the agency factfinding procedures are inadequate . . . [and] when issues that were not before the agency are raised in a proceeding to enforce nonadjudicatory agency action . . .," 401 U.S. at 415, they have since morphed into their own creatures.

As two commentators argued nearly fifteen years after the Court's decision in *Overton Park*, "courts have developed so many unwritten exceptions to the doctrine of record review, that industrious advocates now can introduce any evidence they choose in cases reviewing informal administrative action." Steven Stark and Sarah Wald, *Setting No Records:  The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L. Rev. 333, 336 (1984).  Although this proclamation is arguably overstated,[5] the truth remains that courts have expanded the exceptions under which they will allow parties to supplement the record upon judicial review.  *See, e.g.*, *American Mining Cong. v. Thomas*, 772 F.2d 617, 626 (10th Cir. 1985)(citing six exceptions); *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989)(citing eight exceptions); *but see Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)(questioning the validity of *Esch*).

Unfortunately, lower courts have failed to articulate coherently and consistently the exceptions which justify supplementation of the record.  For example, though the 10th Circuit recognized five possible exceptions in *Custer County Action Ass'n v. Garvey*, 256 F.3d 1024, 1028 n.1 (2001)(quoting *American Mining Cong.*, 772 F.2d at 626, and listing possible

---

[5] For a critique of the overly expansive view of Stark and Wald, *see* Gordon G. Young, *Judicial Review of Informal Agency Action on the Fiftieth Anniversary of the APA:  The Alleged Demise and Actual Status of* Overton Park's *Requirement of Judicial Review "On the Record,"* 10 Admin. L.J. Am. U. 179 (1996).

justifications as: (1) the agency action is not adequately explained and cannot be reviewed properly without considering the cited materials; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is so complex and the record so unclear that the reviewing court needs more evidence to enable it to understand the issues; and (5) evidence coming into existence after the agency acted demonstrates the actions were right or wrong), it listed only two exceptions in *Lee v. U.S. Air Force*, 354 F.3d 1229, 1242 (2004)(citing *American Mining Cong.*, 772 F.2d at 626, and noting that supplementation was appropriate "where the agency ignored relevant factors it should have considered or considered factors left out of the formal record").[6] Although these decisions are not necessarily incongruous, the failure to articulate consistently and comprehensively the exceptions contributes to confusion on the part of litigants and the district judges who are often uncertain how many exceptions exist and what exactly the exceptions are.[7] *See, e.g., S. Utah Wilderness*

---

[6] Such confusion is not exclusive to the 10th Circuit. *Compare Esch*, 876 F.2d at 991 (Exceptions include, "(1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage") *with IMS v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997)(seeming to find that exceptions exist only upon a showing that (1) the agency failed to examine all relevant factors; (2) the agency failed to explain adequately its grounds for decision; or (3) the agency acted in bad faith or engaged in improper behavior in reaching its decision).

[7] Further confusing matters, both of these opinions include an exception where an agency considers factors which it left out of the Administrative Record. Such evidence, however, should be considered "completing the record." As such, in order to reduce the likelihood of confusion, it should not be listed under the exceptions under which parties may "supplement the record." For more discussion of the problems related to confusion between the terminology and standards relating to the admission of these two different forms of evidence, *see supra* n. 7.

*Alliance v. Thompson*, 811 F. Supp. 635, 643, n.4 (D. Utah 1993)("The court should not consider material outside the record unless it falls into one of three exceptions: (1) if the material explains technical information in the record; (2) if the agency failed to consider relevant evidence; or (3) if the agency, in bad faith, failed to include information in the record. If there are gaps in the record, the court should remand for further consideration")(citations omitted).

*Discussion*

WSSC asserts the Colby Notes are appropriate for completion because they reflect deliberative agency discussion that appears nowhere in the agencies' designated Record.[8] Should I deny augmenting the Record with the Colby Notes under the completion exception, WSSC presses for inclusion *via* supplementation. Troubling WSSC most is a line from a December 2007 meeting that reads: "Anticipate FOI & future litigation & purge files & defrag." (*See* Exhibit 37-11 [emphasis in the original]).[9] WSSC urges that this language suggests bad-faith on the part of IDT. Specifically, WSSC believes the Colby Notes—the above ill-starred notation in particular—cast serious doubts as to whether the Federal Respondents provided a full Record supporting their decision-making process.

Federal Respondents oppose any exception allowing the introduction of the Colby Notes and claim the meetings for which no documentation was provided to Petitioner were "non-substantive and no notes or other materials were generated." Although it may be true that "no

---

[8] Implicit in the idea of discussion is the idea of consideration. If an agency is discussing something, it is (one hopes) necessarily considering what it is discussing. Thus, the Colby Notes represent materials considered by one group of relevant agency decision makers, specifically here the IDT team.

[9] Federal Respondents consistently represent the Colby Notes as responsive to the contemplation of "future *legislation*." But while Kevin Colby's hand inked the shapes of the letters composing "legislation," his mind intended the word "litigation," and his affidavit (Doc. 43-2) confirms as much. Federal Respondents submitted the affidavit, and given that they therefore knew or should have known about Mr. Colby's scrivener's error, I find their persistence in categorizing Mr. Colby's direction in terms of anticipating "legislation" delusory.

notes" by way of official minutes were generated at the meetings for which WSSC requests information, it is patently untrue that "*no*" notes were ever generated at these meetings. Mr. Colby's notes, by their very existence, belie any assertion to the contrary, and the otherwise undocumented meetings that occurred on August 2005, December 2005, February 2007, and December 2007 provided the *impeti* for those notes being generated.

The content of the Colby Notes illustrates, moreover, that the aforementioned meetings were indeed "substantive." For example, Colby Notes from a December 2005 IDT meeting reveal the session covered matters relating to an easement, a conversation regarding questions involving the Federal Land Policy and Management Act of 1976 ("FLPMA"), and, perhaps most crucially, four alternatives the IDT was considering in conjunction with its consideration of its ultimately selected plan, the Greenback Cutthroat Trout Restoration Project ("GBCT Project") challenged in this action. As such, the Colby Notes reflect agency thoughts and plans on matters vital to their challenged decision-making.

What remains is to assess whether WSCC has satisfied the requirements sketched above with respect to the showings required to complete a record with given materials. I find that WSSC successfully meets each and all. First, I find that WSSC has clearly set forth 1) when the documents were presented to the agency; 2) to whom; and 3) under what context. The analysis of this three prong requirement is here mercifully straightforward. Because Mr. Colby dated his writings, the "when" is indicated on the Colby Notes themselves. The "who" involved in the matters referenced by the Colby Notes are the IDT members who were present at the August 2005, December 2005, February 2007, and December 2007 meetings. The context is, obviously, that of a meeting environment.

Next, I find the nature of the Colby Notes is such that I must necessarily deem the evidence as considered by the relevant decision-makers. *See* footnote 8, *supra*. Accordingly, I find Federal Respondents must complete the Record with the Colby Notes. Because the Record shall henceforth incorporate the Colby Notes and WSSC's plea for addition by supplementation seeks the same relief just afforded by virtue of completion, I decline to address the merits of WSSC's supplementation request.

*Conclusion*

Given the Record's vacuity for the August 2005, December 2005, February 2007, and December 2007 meetings, the Colby Notes must be added to complete the record. In response to a WSCC email inquiring as to who authored the Colby Notes, Defendant's Forest Fisheries expert, Kristen Sexton, stated, "Kevin's notes be should [sic] reflected by the official meeting notes for the same dates and I would refer you to those for a better understanding of Kevin's cryptic writing." She is right. The Colby Notes *should be* reflected by the official meeting notes for the same dates. But, of course, there are no official meeting notes for many of the Colby Notes' dates, and thus a reviewing court's charge to make a "substantial inquiry" into matters of agency record review is frustrated absent the record's completion with the Colby Notes. Petitioner's Motion, Doc. 37, is GRANTED.

Dated: November 15, 2012                                BY THE COURT:
                                                        s/John L. Kane
                                                        Senior U.S. District Judge