IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action **No. 11-cv-02896-JLK**

**THE WATER SUPPLY AND STORAGE COMPANY**,

    Plaintiff,

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE,**

**TOM VILSAK,** in his official capacity as Secretary of the United States Department of Agriculture**, MARIBETH GUSTAFSON,** in her official capacity as Regional Forester for the Rocky Mountain Region of the United States Department of Agriculture Forest Service**, GLENN P. CASAMASSA,** in his official capacity as Forest Supervisor of the Arapaho and Roosevelt National Forest and Pawnee National Grassland, United States Department of Agriculture Forest Service**, UNITED STATES DEPARTMENT OF INTERIOR, KEN SALAZAR,** in his official capacity as Secretary of the United States Department of Interior**, UNITED STATES PARK SERVICE, JOHN WESSELS,** in his official capacity as Director, Intermountain Region, United States National Park Service**,**

    Respondents,

    and,

**COLORADO TROUT UNLIMITED,**
    Defendant Intervenor.

---

    ORDER GRANTING WSSC's MOTION for LIMITED DISCOVERY,  DOC. 38

Kane, J.

Before me is Petitioner's Motion for Order Authorizing Limited Discovery (Doc.38).[1] The underlying case challenges agency action requiring Petitioner to complete a large and involved Greenback Cutthroat Trout Restoration Project.  Petitioner has also filed a Motion to Supplement and Complete the Administrative Record (Doc. 37).

Petitioner urges me to order limited discovery in this case to ensure that the record is complete such that I may make a substantial inquiry into the agencies' decisions and decision-making processes fully and appropriately informed.  Specifically, Petitioner requests I allow Petitioner to depose Mr. Kevin Colby, who is, or was, a Landscape Architect with the Forest Service during relevant decision making times, and Ms. Kristen Sexton, who is, or was, a Forest Fisheries Biologist who served as a member of the Forest Service Interdisciplinary Team ("IDT") and who was also the Forest Service's primary point of contact for its Final Environmental Impact Statement preparation.  WSSC contends these depositions are necessary to determine whether Federal Respondents prepared their administrative record ("Record") in good faith.

Based on the following facts as presented in Petitioner's Motion and corroborated by Petitioner's attached Exhibits, Exhibit 8 (Doc. 38-8) in particular, I grant Petitioner's discovery motion as to both Mr. Colby and Ms. Sexton.

Upon Petitioner's review of the Record lodged by Defendants, it noted significant gaps in information relating to the IDT meetings.  Most relevant to the instant motion, there are no minutes for IDT meetings held in August 2005, December 2005, February 2007, and December 2007.  Petitioner contacted Defendants to obtain minutes for these meetings, but Defendants protested that the meetings did not generate notes or other materials because they were

---

[1] Parties refer to themselves as "Plaintiff" and "Federal Respondents," but because this is an AP case, their proper appellations are "Petitioner" and "Federal Respondents."

considered "non-substantive." As a result of a 2008 FOIA request, however, Petitioner obtained handwritten notes taken by Mr. Colby that contradict Defendants' claim that the meetings concerned only trivial matters (not to mention the fact that these notes, by their very existence, also show that notes were indeed generated at these meetings). For example, Mr. Colby's notes from an August 22, 2005 meeting indicate discussion of an issue that by his own admission is "key." His writing observes, "Key issue is 'naturalness of stream'; scenery (impacts) are different." In his notes from a December 2005 meeting, Mr. Colby identifies and discusses four alternatives under consideration by the Forest Service, reveals a discussion regarding an easement, and addresses questions surrounding the Federal Land Policy and Management Act of 1976. Most damningly, Mr. Colby's notes for a December 2007 meeting include this red flag: "Anticipate FOIA & future litigation & purge files & defrag." Exhibit 8, Doc. 38-8 [emphasis in the original].

Petitioner wishes to depose Mr. Colby to question him about the meaning of this note and whether the Record is, in fact, complete and whether information and documents were "purged" before development and preparation of the Record now before me. Because much of Mr. Colby's handwriting is illegible and he is the person best able to decipher his own handwriting, a deposition is necessary to allow me to ascertain whether the Record is complete as claimed by the Defendants.

Defendants suggest that the words "purge" and "defrag" relate merely to the Forest Service having a record management policy whereby it instructs IDT members "how to manage records to minimize burdens on themselves and the agency." Defendants fail to explain, however, how or why the record management policy applied to the particular documents that were "purged" or "defraged." Problematically, without knowing specifically what was "purged"

or "defraged," we do not know if the scrapped materials were ones suitable for such culling, and Federal Respondents have produced nothing by way of assurance that the purged/defraged materials were so suitable. Although the "presumption of regularity" that I apply under §706 might ordinarily lead me to take Federal Respondents word for it that it instructed the purging and defragging only of irrelevant documents, it is not unreasonable to view with suspicion the fact that the instruction comes hot on the heels of an advisory warning to "Anticipate FOIA & future litigation." [2]

On the one hand, there is some sense to the Forest Service's contention that "It is normal business and desirable for interdisciplinary teams to delete unneeded files as they progress through the analysis process. This is important from a records management and FOIA standpoint as it can be costly and cumbersome for the agency to respond to a FOIA request if material not germane to a decision is retained."[3] FS8687. On the other hand, we do not want to encourage the willy-nilly deletion of materials because too wide an acceptance of deletion practices may encourage decision makers to re-categorize germane materials with which they did not agree as non-germane for the purpose of disposing of them under the guise of file economy. That is, once litigation commences, parties may be tempted to selectively re-characterize in a fashion that most supports the result advocated.

Moreover, Mr. Colby's notes provide no context for the document management discussion. Thus, it is possible, for example, that the discussion about document management

---

[2] WSSC challenges the Respondents' actions under NEPA and FLPMA. As these statutes fail to define or specify the standard of review to be used in examining Respondents' actions, the Administrative Procedures Act ("APA"), 5 U.S.C. § 500, *et seq.,* provides the framework for this appeal. Accordingly, I must use the standards articulated in the APA in considering the merits of Petitioner's Motion and apply a "presumption of regularity" to Respondents' designated Record.

[3] Conceding the sense, I question the timing. One would imagine that such an important policy would have been explained to the IDT sooner than two years into the process. Another curiosity of timing present in this matter is that IDT was not instructed about the document management policy until December 2007 and WSSC's FOIA request came shortly thereafter in 2008.

was indeed an innocuous, general one about how agency actors should dispose of irrelevant or redundant materials because these materials would be expensive and burdensome for the agency to produce in the event of a FOIA request. It is equally conceivable, however, that the catalyst for the discussion was agency fear that a particular FOIA request was forthcoming and the agency had in mind a particular set of unflattering materials that it wanted to encourage IDT members to expunge before it had to hand them over.

Of course, Respondents state that "the agency's record management instructions were not intended to lead to the illicit destruction of agency files," and that statement, if true, spoils the potential veracity of the second speculative scenario sketched above. All the same, while it may be perfectly true that the instructions were not intended to lead to the illicit destruction of agency files, if agency files that should not have been destroyed were in fact destroyed per either a misunderstanding of the directions by IDT members or per a willful misconception by IDT members about what the document management policy really purposed, the fact that materials are missing from the Record is still a problem, regardless of whether the destruction was deliberate or accidental.

With respect to the proposed deposition of Ms. Sexton, Petitioner shows skepticism over the fact that at, or after, an IDT meeting on February 15, 2007, Ms. Sexton was assigned the task of preparing a "rationale for dismissing" "Bill Miller data". (Exhibit 9, Doc. 38-9). Dr. William Miller is Petitioner's aquatics ecologist. He prepared and submitted scientific and technical data and information during the NEPA process that was contrary to, and did not provide scientific support for, the Forest Service's preferred alternative—the Project to which Petitioner has been assigned and is challenging in this matter. Petitioner takes issue with the fact that Ms. Sexton's task was worded as preparing a rationale to "dismiss" Dr. Miller's data as opposed to "analyze"

or "fairly consider" Dr. Miller's data. Accordingly, Petitioner asserts that Ms. Sexton's deposition is necessary to determine whether her assignment shows the Forest Service as having designed to ignore serious criticism of its data during the NEPA process.

I find Petitioner's argument stretches the text a bit, however, because the task itself is so vague. It simply says "Rationale for dismissing." It does not say "find" or "fabricate" a "rationale for dismissing," but rather just "Rationale for dismissing." Whatever rationale she did prepare as a result of her assignment should speak for itself; the result may be to dismiss the data, but so long as the rationale is well-reasoned and well-supported, I take no issue. I am more inclined to view the phrase as simply asking Ms. Sexton to articulate her likely already existing rationale for dismissing. That is, Dr. Miller's data may well have first been "analyzed" or "fairly considered," and then, as a result of that analysis or fair consideration, deemed to be unavailing such that its dismissal was legitimate. That is, the decision not to use Dr. Miller's evidence either by Ms. Sexton or the Forest Service as a whole may have been made prior to Ms. Sexton's being directed to address the rationale in some sort of formal write-up. Again, even if this is a speculative chronological order, the rationale should stand alone in speaking on the merits of the data's dismissal. If Petitioner believes the rationale for the dismissal is hokey, it can argue so without having deposed its author.

That said, Ms. Sexton's role as primary contact person for the Forest Service does mean that she appears to be the agency person most knowledgeable about the Forest Service's record keeping for those IDT meetings for which there are no minutes, including those referenced in Mr. Colby's cryptic notes. Thus, her deposition is necessary to allow me to ensure the Record is as complete as it should be (and certainly while Petitioner is deposing Ms. Sexton it can inquire into the "dismiss" assignment, which may indeed shed light on the matter---the immediately

above paragraph merely means to express my uncertainty that that claim alone, without Ms. Sexton's status as point person, is a sufficient basis for ordering discovery).

Wherefore, I GRANT Petitioner's Order Authorizing Limited Discovery (Doc.38).

Dated: November 15, 2012					BY THE COURT:
							s/John L. Kane
							Senior U.S. District Judge